**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **LIBERTY HANGOUT**, a registered student organization at Kent State University; and **MICHAEL HEIL**, an individual; | CASE NO. 5:18CV2567 |
| Plaintiffs, | |
| vs. | JUDGE: |
| **BEVERLY J. WARREN**, in her official capacity as President of Kent State University; **LAMAR R. HYLTON**, individually and in his official capacity as Kent State University Dean of Students; **DEAN TONDIGLIA** in his official capacity as Director of Public Safety & Chief of the Kent State University Department of Public Safety; **RICK O'NEIL**, individually and in his official capacity as Kent State University Department of Public Safety lieutenant; and DOES 1-25; | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>(TELEPHONIC ORAL ARGUMENT HEARING REQUESTED) |
| Defendants. | |

1

## INTRODUCTION

Plaintiff's Verified Complaint arises from efforts by Kent State University ("KSU") to restrict and stifle political speech. At its core, this is a case of state officials ratifying an unconstitutional heckler's veto. Defendants have adopted a written policy, and are engaged in a pattern and practice of enforcing its policy, in a manner that vests in University officials the absolute discretion to impose arbitrary and unreasonable security fees on registered student groups. Defendants have selectively applied this policy in a discriminatory fashion, resulting in the marginalization or outright banning of speech and expression advocating for the Second Amendment.

## LEGAL STANDARD

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Four factors are important in determining whether a temporary restraining order is appropriate: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003) (overruled on other grounds in *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)). The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. *In re DeLorean Motor Co.*, 755 F.2d at 1229.

## STATEMENT OF THE FACTS

### A.   Liberty Hangout Applies For Use Of KSU's Kiva Event Spaces

KSU's student center ("KSC") is described as:

> dedicated to meeting the needs of our students, faculty/staff, and University guest. Our event spaces have the flexibility needed to support the many types of events taking place on campus each day. From student activities to conferences we have a space to meet your needs.[1]

The KSC first floor event space, known as the Kiva event space, is a 24' x 38', 4144 square foot auditorium that can accommodate 410 guests.[2] The Kiva event space is opened for expressive activity by part or all of the public.

On or about October 10, 2018, Plaintiff Michael Heil ("Heil") on behalf of KSU's Liberty Hangout chapter (collectively "Liberty Hangout") prepared and submitted an application for use of the Kiva event space on November 19, 2018, to host an event entitled "Let's Talk Gun Rights" featuring guest speaker Kaitlin Bennett. Decl. Heil, ¶ 3. Ms. Bennett is a KSU graduate, former president and founder of KSU's Liberty Hangout chapter, an avid gun enthusiast and Second Amendment advocate. The application was made via an online campus protocol. *Id.*

On or about October 25, 2018, Liberty Hangout received confirmation from the KSU Student Center of a "hold" on the Kiva event space consisting of a breakdown of estimated costs. In addition to equipment and set-up labor costs, the estimate included event security costs totaling $1,798.40 chargeable to Liberty Hangout as follows:

| | | | |
|---|---|---|---|
| Police Officers (3.5 hours @ $48.00/hr) | 8 | $168.00 | $1,344.00 |

---

[1] https://www.kent.edu/universityevents/event-spaces

[2] https://www.kent.edu/university-events/first-floor-event-spaces

3

| Hall Security Personnel (4 hours @ $18.35/hr) | 5 | $73.40 | $367.00 |
| Hall Security Personnel (4 hours @ $21.85/hr) | 1 | $87.40 | $87.40 |

*Id., ¶ 4,* Exh. A.

**B.     KSU'S Event Security Fee Policy**

KSU's Policy Register PR 4-03.1(C)(3) (hereinafter "security fee policy") provides in

pertinent part:

> (1) Sponsorship. All demonstrations, marches and **non-university affiliated speakers** …
> must be sponsored by a registered student organization or university department.
> * * *
> (3) Responsibility. In all instances, those sponsoring demonstrations, marches or speakers
> are responsible for making the necessary provisions to maintain the peaceful demeanor of
> the assembly, including the arrangements for marshals or other self-governing services in
> cooperation with the assigned university security personnel. **The sponsoring group shall
> be responsible for all expenses and damages incurred to the university**.

*Id., ¶ 5,* Exh. B.  (Emphasis added.)

**C.     UW's Security Fee Policy, Facially And Applied To Plaintiffs, Requires
         Reference To The Reactions Of  Violent Mobs Targeting Politically
         Conservative Speakers**

KSU determines the amount of security fees it assesses against a group based upon the

reaction to controversial speakers by hostile agitators.  KSU makes no pretense that its security

policy at any location on campus shifts the financial burden for security to RSOs.  In response to

Plaintiffs' concerns over the security charges estimated for Liberty Hangout's November 19, 2018,

event, counsel for KSU's attorney provided this explanation:

> As you know, Ms. Bennett's recent September 29, 2018 rally on Kent State's campus
> required a significant law enforcement presence to ensure the safety of Ms. Bennett, rally
> attendees, and members of the University community. Because this event was not
> sponsored by a student organization, the University footed a bill of approximately
> $65,000.00 to provide necessary security. Since that rally, Ms. Bennett has made various
> claims on social media that she has received death threats and other threats of physical
> violence. Kent State would not be justified in ignoring these threats or the security needs
> attendant to Ms. Bennett's previous event as it considers how to best protect Ms. Bennett,

4

Liberty Hangout, and members of the University community who may participate in the anticipated November 19 event.

Decl. Becker, ¶ 5, Exh. C.

Counsel's explanation failed to identify whether or what objective, content- and viewpoint-neutral standards require KSU to shift the financial burden of its security costs to Plaintiffs.

**D.  Plaintiffs Intend To Engage In Expressive Activity At UW In The Future**

Plaintiffs intend to engage in protected speech activities in the future at KSU, including within the Kiva event space. Decl. Heil, ¶ 6. Other RSOs at KSU are realistically likely to take advantage of the use of UW's venues for protected speech activities as well. A realistic danger that the security fee policy will significantly compromise First Amendment protections for Plaintiffs as well as parties not before the Court exists and student speech activities are being chilled due to Defendants' enforcement of its security fee policy.

**ARGUMENT**

**PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF**

**A.  Plaintiffs' Likelihood Of Success On The Merits Is Strong**

Plaintiffs are likely to succeed on the merits of this case because Defendants' security fee policy is facially and as-applied invalid under the First and Fourteenth Amendments to the U.S. Constitution. The First Amendment's guarantees of freedom of expression and association fully extend to public universities like KSU. *See, e.g., Papish v. Bd. of Curators of the Univ. of Mo.*, 410 U.S. 667, 670 (1973) ("the mere dissemination of ideas – no matter how offensive to good taste – on a state university campus may not be shut off in the name alone of 'conventions of decency.'"). Here, the Kiva event space constitutes, at a minimum, a limited public forum for the purposes of any analysis under the First Amendment. *Christian Legal Science v. Martinez*, 130 S.

5

Ct. 2971, 2986 (2010).[3] Government entities establish limited public forums by "opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Christian Legal Science v. Martinez*, 130 S.Ct. 2971, 2984 n.11 (2010) (quotations and citations omitted); *see also Good News Club v. Milford Central School*, 454 U.S. 263 (1981). In such a forum, the governmental may not impose restrictions on speech that are unreasonable and viewpoint based, as here. *Id.*

Nor can a law condition the free exercise of First Amendment rights on the "unbridled discretion" of government officials. *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992). By requiring Plaintiffs to pay security fees based on the potential reaction of those opposed to the viewpoints expressed, the University is exercising unbridled discretion inherent in its security fee policy to impose an unconstitutional heckler's veto. As the Supreme Court has articulated this rule, "[l]isteners' reaction to speech is not a content-neutral basis for regulation. *Id.* at 134-35. Accordingly, "[s]peech cannot be *financially burdened*, any more than it can be punished or banned, simply because it might offend a hostile mob." *Id.* (Emphasis added.) "A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation *because such discretion has the potential for becoming a means of suppressing a particular point of view*." *Id.* (Emphasis added.) The Sixth Circuit emphasizes:

> *Maintenance of the peace should not be achieved at the expense of the free speech*. The freedom to espouse sincerely held religious, political, or philosophical beliefs, especially in the face of hostile opposition, is too important to our democratic institution for it to be

---

[3] Arguably, the Kiva event space is a designated public forum "opened for expressive activity by part or all of the public." *Arkansas Educ. TV Commn. v. Forbes*, 523 U.S. 666, 677 (1998); *and see Church of the Rock v. City of Albuquerque*, 84 F.3d 1273, 1278 (10th Cir.1996) (city-owned senior center is a designated public forum because, although "not a traditional location of public debate or assembly," the city opened it "to the public for discussive purposes" by permitting "lectures and classes on a broad range of subjects by both members and non-members"). "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009).

abridged simply due to the hostility of reactionary listeners who may be offended by a speaker's message.

*Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 252 (6th Cir. 2015). (Emphasis added.)

KSU's security fee policy and its practice of applying it in its sole discretion, like the ordinance in *Forsyth County*, vest campus administrators with unbridled discretion to charge RSOs security fees for their events based on the content and/or viewpoints expressed and their hostile reception by protesters. KSU's policy and practice therefore violates the First Amendment rights of Plaintiffs and all students on campus. Such a policy is neither reasonable nor content- or viewpoint-neutral. *See, e.g.*, *College Republicans of U. of Washington v. Cauce*, C18-189-MJP, 2018 WL 804497, at *2 (W.D. Wash. Feb. 9, 2018) (university security fee policy fails to provide narrowly drawn, reasonable and definite standards, giving administrators broad discretion to determine how much to charge student organizations or whether to charge at all.)

Given its facial vagueness,[4] the security fee policy allows Defendants to arbitrarily and discriminatorily regulate student expression by acting as a prior restraint on speech that offends a violent mob. As such, the security fee policy is facially invalid and unconstitutional.  The policy is also invalid as applied to Defendants, who have been financially burdened so as to effectively deprive them of the opportunity to host their selected speaker, while in the meantime, KSU has hosted numerous speakers *without* shifting the financial burden to sponsoring RSOs.

For similar reasons, Defendants' conduct has violated Plaintiffs' equal protection rights. "The first step in equal protection analysis is to identify the [defendants'] classification of groups."

---

[4] The policy does not directly refer to "security fees." It merely states that RSOs are responsible for "all expenses and damages incurred to the university." This language effectively shifts the responsibility of adopting adequate security measures to prevent hostile protesters from damaging University property to innocent RSOs.

*Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau,* 847 F.2d 593, 596 (9th Cir. 1988). To accomplish this, a plaintiff may show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people. *Christy v. Hodel,* 857 F.2d 1324, 1331 (9th Cir. 1988). Here, Defendants treat Plaintiffs differently based on the hostile reactions of Second Amendment opponents and the absence of any form of hostile reaction by other speakers addressing other topics.

B.    **Plaintiffs Are Likely to Be Harmed Irreparably Absent Immediate Injunctive Relief**

"The freedom to express political opinions is the heart of the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). "The denial of First Amendment freedoms generally constitutes irreparable harm, and that harm is exacerbated where a plaintiff seeks to engage in political speech." *Firearms Policy Coalition Second Amendment Defense Committee v. Harris*, 192 F.Supp.3d 1120 (June 22, 2016); *see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148 (9th Cir. 1998). "In other words, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, *even for a short period*." *College Republicans at San Francisco State University v. Reed,* 523 F.Supp.2d 1005, 1011 (N.D. Cal. 2007) (emphasis added); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

C.    **The Balance of Hardships Tips Decidedly in Plaintiffs' Favor**

In First Amendment cases, "the 'balancing of the hardships' factor[, like the 'irreparable harm' factor,] tends to turn on whether the challengers can show that the regulations they attack are substantially overbroad." *Reed*, 523 F.Supp.2d at 1011. Given Plaintiffs' showing of the facially and as-applied invalidity of the vague security fee policy, Plaintiffs necessarily have

shown that leaving that policy in place "would substantially chill the exercise of fragile and constitutionally fundamental rights," and thereby constitute an intolerable hardship to Plaintiffs. *Reed*, 523 F.Supp.2d at 1101. As mentioned above, Defendants' assessment of financially burdensome security fees will deprive Plaintiffs of their freedom of expression, assembly and association and will deny students an opportunity to hear from a gifted speaker whose message resonates with many students. By contrast, temporarily enjoining Defendants' enforcement of this policy will not result in hardship to Defendants, who are in a position to adopt, at least on an interim basis, a more narrowly crafted set of equally applied provisions that enable KSU to achieve any legitimate ends without unjustifiably invading First Amendment freedoms. *See id.* In addition, Defendants will suffer no legitimate harm by accommodating a speaking event that KSU has provisionally agreed to host, and that is of a type that KSU consistently accommodates with respect to non-conservative speakers and student groups. Indeed, KSU allowed an off-campus group – the International Workers of the World – to use Red Square on a Saturday with no security costs assessed against them. Defendants will suffer no harm by providing Plaintiffs with the same opportunity to host their speakers of choice, as the opportunities routinely afforded by Defendants to non-conservative students and student groups. The Constitution demands no less.

## A. Injunctive Relief is in the Public Interest

The requirement that issuance of a preliminary injunction be in the "public interest" usually is deemed satisfied when it is clear that core constitutional rights would remain in jeopardy unless the court intervened. *Reed*, 523 F.Supp.2d at 1011. There is a public interest "in ensuring... protection of First Amendment liberties." *Stokey v. N. Canton City Sch. Dist.*, 5:18-CV-01011, 2018 WL 2227783, at *3 (N.D. Ohio May 4, 2018). Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First

9

Amendment principles. *See, e.g., Suster v. Marshall*, 149 F.3d 523, 530 (6th Cir.1998) and cases cited therein.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request the Court grant their request for a temporary restraining order prohibiting Defendants from assessing security fees against Plaintiff in connection with the November 19, 2018, event at the Kiva auditorium.

Date: November 7, 2018

Respectfully submitted,

| FREEDOM X | LAW OFFICES OF MICHAEL A. MALYUK |
|---|---|
| *s/ William J. Becker, Jr.* | *s/ Eric S. McDaniel* |
| William J. Becker, Jr. | Eric S. McDaniel (0090827) |
| (CA Bar No. 134545) | 138 Stow Avenue |
| (Pro Hac Vice admission pending) | Cuyahoga Falls, Ohio 44221 |
| www.FreedomXLaw.com | www.malyuk.com |
| 11500 Olympic Blvd., Suite 400 | Telephone: (330) 929-9700 |
| Los Angeles, CA 90064 | Fax: (330) 929-9720 |
| Telephone: (310) 636-1018 | Email: eric@malyuk.com |
| Fax: (310) 765-6328 | |
| Email: bill@freedomxlaw.com | Attorneys for Plaintiffs, Michael Heil and Liberty Hangout |
| Attorneys for Plaintiffs, Michael Heil and Liberty Hangout | |

## PAGE LENGTH CERTIFICATION

I hereby certify this memorandum adheres to the page limitations set forth in LR 7.1(f) of

10 pages for expedited cases.

DATED this 7th day of November, 2018

By: _/s/ Eric S. McDaniel_
    Eric S. McDaniel (0090827)

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2018, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CMECF system.

DATED this 7th day of November, 2018

By: /s/ Eric S. McDaniel
Eric S. McDaniel (0090827)