**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LIBERTY HANGOUT**, a registered student organization at Kent State University; and **MICHAEL HEIL**, an individual;<br><br>                Plaintiffs,<br><br>     vs.<br><br>**BEVERLY J. WARREN**, in her official capacity as President of Kent State University; **LAMAR R. HYLTON**, individually and in his official capacity as Kent State University Dean of Students; **DEAN TONDIGLIA** in his official capacity as Director of Public Safety & Chief of the Kent State University Department of Public Safety; **RICK O'NEIL**, individually and in his official capacity as Kent State University Department of Public Safety lieutenant; and DOES 1-25;<br><br>                Defendants. | Case No: 5:18CV2567<br><br>The Honorable John R. Adams<br><br>**PLAINTIFFS' REPLY BRIEF RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Hearing Date: November 13, 2018<br>Hearing Time: 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.    REGARDLESS OF THE NATURE OF THE FORUM, JUSTIFYING THE ASSESSMENT OF SECURITY COSTS ASSESSED AGAINST PLAINTIFFS AMOUNTS TO A HECKLER'S VETO. ............................................................................ 2

    A.    Defendants' Asserted Fears Are Purely Speculative ............................................. 2

    B.    Speech On Only One Side Of A Contentious Debate Will Be Suppressed ............ 3

    C.    In Heckler's Veto Cases, Forum Analysis Is Largely Immaterial ......................... 3

II.    THE SECURITY FEE POLICY IS UNREASONABLE AND VIEWPOINT-BASED BECAUSE IT RATIFIES A HECKLER'S VETO. ............................................................ 4

III.    PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE INJURY. ............................. 5

CONCLUSION .......................................................................................................................... 5

CERTIFICATE OF SERVICE .................................................................................................. 7

## TABLE OF AUTHORITIES

**Cases**

*Seattle Mideast Awareness Campaign v. King Cty*. 781 F.3d 489 (9th Cir.2015) .......................... 2

**Court Orders**

*College Republicans of U. of Washington v. Cauce*
     C18-189-MJP, 2018 WL 804497 (W.D. Wash. Feb. 9, 2018) ................................... 2, 4, 5

*New Century Foundation et al v. Robertson*
     3:18-cv-00839 ........................................................................................................ 3, 5

**INTRODUCTION**

Defendants' central argument hinges on the appropriate level of scrutiny the Court must apply in deciding this matter. They contend that Kiva Auditorium is a limited public forum subject only to reasonable and viewpoint-neutral speech regulations. On this premise, Defendants contend that the security fee policy is reasonable, <u>even though it inexplicably shifts the financial burden of security costs to student organizations, who can neigh afford such costs absent the aid of philanthropy</u> (such as the $55,336.45 paid on behalf of the College Democrats by the "Hillary for America" organization for a Hillary Clinton presidential campaign event (Def. Opp., Decl. Myers, ¶ 11)).

Defendants further contend that the security fee policy is viewpoint-neutral, <u>even though the imposition of security fees on student organizations amounts to government ratification of an impermissible heckler's veto</u>. Defendants additionally argue that Plaintiffs cannot claim irreparable harm because they cannot show "purposeful unconstitutional suppression of speech," <u>even though they are purposefully causing Plaintiffs to cancel their pro-Second Amendment event if obligated to pay for enhanced campus security</u>.

As explained below, while performing a security assessment is justifiable, <u>shifting the financial burden of security on student organizations</u> at KSU has not been and cannot be justified as reasonable under any circumstances. Moreover, the de facto suppression of speech based on the taxation of it stemming from fear of violence constitutes an impermissible heckler's veto under any level of scrutiny. Finally, Plaintiffs will suffer irreparable harm so long as a "Sword of Damocles" hangs over them.

1

**ARGUMENT**

I.  **REGARDLESS OF THE NATURE OF THE FORUM, JUSTIFYING THE ASSESSMENT OF SECURITY COSTS ASSESSED AGAINST PLAINTIFFS AMOUNTS TO A HECKLER'S VETO.**

Citing *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 502-03 (9th Cir.2015), Defendants contend that heckler's veto concerns do not carry the same weight in a limited public forum as they do in other fora. Def. Opp., p. 18. Yet, the language they quote <u>affirms</u> that heckler's veto concerns arise even in limited public fora (fact that viewpoint discrimination – not content discrimination – is forbidden in a limited public forum "does not mean 'heckler's veto' concerns have no relevance in a limited public forum … where the asserted fears of a hostile audience reaction are <u>speculative and lack substance, or where speech on only one side of a contentious debate is suppressed</u>.") *Id.* at 502–03 (emphasis added).

A.  **Defendants' Asserted Fears Are Purely Speculative**

Defendants do not disguise the fact that their justification for additional security at Plaintiffs' event arises from a prior protest involving Plaintiffs, but they also point out that they have approved other events for Liberty Hangout where there were no protests. Def. Opp., Decl. Myers, ¶¶ 9-10. Though they assert that the need for enhanced security measures is not speculative, they offer no evidence of the number of protesters they reasonably expect to show up, the areas of campus where protesters are expected to locate themselves or any other objective factors. As the court in *College Republicans of U. of Washington v. Cauce*, ("*College Republicans*") C18-189-MJP, 2018 WL 804497, at *2 (W.D. Wash. Feb. 9, 2018) observed under a similar factual scenario, "While the Chief of Police offers a lengthy discussion of the 'objective facts' he considered … nowhere does he explain how these facts support his determination as to the number of officers

needed … [nor even] identify the open-source websites that the UW Police Department referenced to corroborate information about the event." Decl. Becker, ¶ 4, Exh. "A" (Order on TRO).

### B. Speech On Only One Side Of A Contentious Debate Will Be Suppressed

A heckler's veto concern is additionally present here because the imposition of security fees on Plaintiffs effectively will result in the suppression of their speech (by cancellation of the event to avoid the costs) where it is improbable that anti-Second Amendment expression would similarly invite a hostile response from protesters.[1]

### C. In Heckler's Veto Cases, Forum Analysis Is Largely Immaterial

Just last week, the heckler's veto doctrine was scrupulously examined in a similar First Amendment case when a federal judge sitting in the Middle District of Tennessee held that regardless of the nature of the forum, "the variation in the price of renting the defendant's conference center based on the expected number of protesters and the attendant security costs, as well as the cost of cleaning up the mess and repairing any damages caused by such protesters, amounts to a heckler's veto." *New Century Foundation et al v. Robertson* (3:18-cv-00839, Dkt. No. 29, pp. 25-26). Decl. Becker, ¶ 5, (Memorandum granting EPI). In other words, forum analysis is not dispositive in heckler's veto cases.

In *New Century Foundation*, a controversial group applied for use of a conference center at the Montgomery Bell Inn & Conference Center ("MBICC") located at Montgomery Bell Inn & State Park to hold its annual conference, just as it had the five previous years. The plaintiffs asserted

---

[1] Indeed, Plaintiffs applied earlier this year for use of Risman Plaza to hold an "Open Carry Rally" but were forced to cancel the event when KSU sought to charge it over $10,000 in security fees. Decl. Heil, ¶¶ 3-4, Exh. "A" (event hold confirmation). Instead, KSU used Risman Plaza as a zone dedicated to confining protesters while Kaitlin Bennett and members of Liberty Hangout were approved to walk around the campus. *Id.*, ¶ 5. The sad irony is that the violent protesters were permitted to occupy Risman Plaza <u>at no charge</u>. *Id.*

> that the requirement that they pay for security to ensure public safety at their own conference—because of the threat posed by protesters not affiliated with their organization—constitutes unconstitutional viewpoint and/or content discrimination in the form of a heckler's veto, because it authorizes Defendant to examine the content of the message conveyed, estimate the public response to that content, and judge the number of police necessary to meet that response. They point out that, if they rented a conference center in a private hotel in downtown Nashville, Metro police would be required to keep order, and the plaintiffs would not have to pay for it.

*Id.* at p. 24. Last year, protesters disrupted the event. This year, the contract obligated the plaintiffs to paying security costs. The court noted that "[b]oth parties seem to assume that the relevant venue, for purposes of the forum analysis, is the conference center, and not the Park itself or the hotel/inn associated with the MBICC." *Id.,* p. 2. The court found that neither the conference room nor the hotel were necessarily the correct forum to conduct its analysis, since the protesters might be located elsewhere. Accordingly, although the plaintiffs sought "to reserve space in a nonpublic forum, the actual cost of doing so is related to the use of designated public space by third parties who are not actually invited to attend their event." *Id.,* p. 19. It concluded that the Plaintiffs had established a likelihood of success on the merits, because:

> requiring the plaintiffs, in order to be permitted to rent the lodge and conference center at the MBICC, to agree in advance to be responsible for the security costs incurred by the Parks Department as a result of the actions of others in protesting the plaintiffs' viewpoint, and for the cost of repairing any damages caused by such protesters, amounts to an unreasonable prior restraint on the plaintiffs' speech, regardless of what level of scrutiny is applied to the defendant's action.

*Id.,* p. 30. The same principle applies here.

II. **THE SECURITY FEE POLICY IS UNREASONABLE AND VIEWPOINT-BASED BECAUSE IT RATIFIES A HECKLER'S VETO.**

The KSU fee-shifting policy is inherently unreasonable under any standard applied, and Defendants have failed even to attempt to justify it. As the *College Republicans* court recognized, administrators "must necessarily examine the content of the message that is conveyed, estimate the response of others to that content, and judge the number of police necessary to meet that

response. The fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content." Here, though, Defendants are examining not just the *content*, but the *viewpoint* because protesters opposed to Plaintiffs' viewpoint are threatening violence.

III. **PLAINTIFFS HAVE DEMONSTRATED IRREPARABLE INJURY.**

*College Republicans*:

Plaintiffs have also demonstrated irreparable harm, as "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. (Citations and quotation marks omitted.) Here, it is not the amount of the fee, but rather the process by which it was assessed, that chills the exercise of First Amendment speech and expression." *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citations omitted) (speech may be impermissibly chilled by "threatening or causing pecuniary harm" or "withholding a license, right, or benefit").

*New Century Foundation*:

The defendant [] suggests that … the total cost of security is not assessed until after the event. As such, he argues, it does not constitute a prior restraint on speech. The court is not persuaded by this argument.... At the time they are called upon to enter into the contract, months in advance of the event, the plaintiffs know that, by signing the contract, they agree to be responsible for security costs incurred by the Park that are in excess of whatever the "typical staffing expenses for the facility" may be, even if such costs have no connection to the behavior of the plaintiffs' group…. At the time of contracting, the plaintiffs have no way of estimating how much those costs will be, whether $3,000 or $30,000. The uncertainty of the amount to be assessed and the plaintiffs' lack of control over it only exacerbate the degree to which the requirement imposes a "prior restraint." The evidence in the record indicates that the parties would be able to estimate what the security costs might be shortly before the event takes place, based upon intelligence gathered from various sources, but, by that time, the plaintiffs would have already entered into the contract. They might still have the ability to cancel their reservation and recover some or all of the reservation deposit, depending upon when they cancel, but by then they will likely have foregone their opportunity to hold their conference elsewhere on the same date.

## CONCLUSION

For all the foregoing reasons, in addition to the reasons detailed in the originating memorandum, Plaintiffs respectfully ask this honorable Court to grant its Motion for a Temporary Restraining Order.

5

Date: November 12, 2018	Respectfully submitted,

*s/ William J. Becker, Jr.*
William J. Becker, Jr. (CA Bar No. 134545)
(Pro Hac Vice)
**FREEDOM X**
11500 Olympic Blvd., Suite 400
Los Angeles, CA 90064
Telephone:  (310) 636-1018
Fax: (310) 765-6328
Email: bill@freedomxlaw.com
www.FreedomXLaw.com

Attorneys for Plaintiffs, Liberty Hangout and Michael Heil

*s/ Eric S. McDaniel*
Eric S. McDaniel (0090827)
**LAW OFFICES OF MICHAEL A. MALYUK**
138 Stow Avenue
Cuyahoga Falls, Ohio 44221
Telephone: (330) 929-9700
Fax: (330) 929-9720
Email: eric@malyuk.com
www.malyuk.com

Attorneys for Plaintiffs, Liberty Hangout and Michael Heil

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2018, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CMECF system.

DATED this 12th day of November, 2018

By: <u>/s/ *William J. Becker, Jr.*</u><br>William J. Becker, Jr.